UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON VILLERY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JAY JONES, et al.,<br><br>　　　　　Defendants. | CASE NO. 1:15-cv-01360-DAD-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS (1) FOR PLAINTIFF TO PROCEED ON COGNIZABLE FIRST AMENDMENT RETALIATION CLAIMS AGAINST DEFENDANTS JONES, SCHMIDT, YERTON, ESCARCEGA, AND NELSON, AND (2) TO DISMISS ALL OTHER CLAIMS AND DEFENDANTS WITH PREJUDICE**<br><br>(ECF NO. 16)<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

　　　　Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. On June 16, 2016, the then-assigned magistrate judge screened Plaintiff's complaint and found it stated a cognizable First Amendment claim retaliation against Defendants Jones, Schmidt, Yerton and Escarcega. (ECF No. 9.) Plaintiff filed a motion for reconsideration on July 8, 2016. (ECF No. 10.) The motion for reconsideration was granted in part and denied in part and concluded Plaintiff had stated an additional cognizable First Amendment retaliation claim against Defendant Schmidt. Plaintiff was given leave to amend.

The case was then reassigned to the undersigned September 8, 2016. Plaintiff's First Amended Complaint is now before the Court for screening. (ECF No. 16.)

## I. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiffs must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 677-78.

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). To state a claim under section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that

the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

Under section 1983 the Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III. Plaintiff's Allegations

Plaintiff is incarcerated at the California healthcare facility, but complains of acts that occurred at the California Correctional Institute ("CCI"). Plaintiff names as Defendants (1) Jay Jones, Facility Captain (2) Richard Schmidt, Correctional Sergeant or Lieutenant, (3) Phillip Rhodes, Correctional Sergeant, (5) Lawrence Emard, Correctional Sergeant, (6) Christopher Yerton, Correctional Sergeant, (7) Rafael Escarcega, Correctional Sergeant, (8) David Nelson, Correctional Officer, (9) Norman Karlow, Institution Librarian, and (10) L. Marin, Librarian Technician Assistant.

Plaintiff's allegations can be fairly summarized as follows:

#### A. Issues with Plaintiff's Housing Assignment

Plaintiff suffers from Post-Traumatic Stress Disorder ("PTSD") which causes him interpersonal problems. On January 21, 2014 Plaintiff met with his mental health caseworker and discussed his PTSD symptoms, including concerns that his symptoms could lead to violence between him and any potential cell mate. Plaintiff's caseworker contacted Defendant Schmidt about Plaintiff's concerns. Shortly afterwards Defendant

3

Schmidt told Plaintiff, "There isn't room for single cell housing here." Defendant Schmidt informed Plaintiff that his mental health problems would not be a consideration in assigning cell mates. Schmidt also accused Plaintiff of making threats against other inmates, although Plaintiff had no cell mate to threaten at that time.

Schmidt placed Plaintiff in a holding cage pending transfer to Administrative Segregation ("AdSeg"). Two hours later, Plaintiff was told that AdSeg was full and he was returned to his cell. Schmidt told Plaintiff that he would see if space opened up in AdSeg the next day.

On January 22, 2017, Defendant Schmidt again placed Plaintiff in a holding cell pending transfer to AdSeg, but it was still full. Defendant Schmidt informed Plaintiff he would have been placed in Administrative Segregation if there were room.

Later that day, Plaintiff was interviewed by Defendant Jones and Schmidt. During this interview, Defendant Jones informed Plaintiff that he would be placed on C-Status, a disciplinary designation, for manipulation of staff. Defendant Jones told Plaintiff that mental health staff do not make recommendations for housing and if Plaintiff continued to discuss these issues with mental health staff Plaintiff would be written up for manipulation of staff. Plaintiff stated that it was illegal to threaten to discipline Plaintiff for discussing issues with mental health staff. Defendant Schmidt reiterated that Plaintiff would be disciplined for further attempting to gain single-cell housing by bringing up his symptoms with mental health staff or conveying concerns about placing him in a cell with another inmate.

That evening, Plaintiff filed two complaints regarding conditions at CCI. The next day, January 23, 2014, Plaintiff filed a grievance against Defendants Schmidt and Jones for threatening Plaintiff with disciplinary action or administrative segregation.

On January 27, 2014 Defendant Schmidt filed a disciplinary report against Plaintiff for "Unlawful Influence" arising from the concerns Plaintiff had raised with mental health staff on January 22. Defendant Jones classified the report and authorized the charge.

4

Plaintiff alleges that this report was fabricated and in retaliation for Plaintiff's earlier grievances. On February 6, 2014, Plaintiff was found not guilty of the offense.

On February 1, 2014 Plaintiff was placed on a 90-day restriction from yard activities due to an unrelated disciplinary finding of guilt. During this restriction, the only way for Plaintiff to gain library access was for Defendant Marin to specifically release Plaintiff. Prison rules restrict access to the library only for inmates on C-status. Plaintiff was never on C-status. However, during Plaintiff's 90-day restriction, Marin only allowed Plaintiff access to the law library once, on March 12, 2014.[1] That day, Plaintiff asked about his inability to access the library, and Defendant Marin told Plaintiff that she had been ordered to deny him access to the library by Defendants Karlow and Jones.

On March 6, 12 and April 3, 2014, Plaintiff provided Defendants with written notice that he was not on C-status. Defendants Marin and Karlow falsely stated that Plaintiff was C-status on March 27 and April 7, 2014. A CDCR appeals investigation eventually led to a finding that Plaintiff had been denied access to the library in violation of prison rules.

On June 18, 2014 Plaintiff was given a cell mate, Cedric Jones. Jones had mental health problems and had been moved five times before being placed with Plaintiff; he was moved fourteen times thereafter. Plaintiff and Jones had many conflicts and both repeatedly asked to be moved. Plaintiff only slept when Jones was not in the cell. On June 26, 2014 Plaintiff submitted a complaint regarding the situation to Defendant Nelson to forward to Defendant Jones.

On June 28, 2014 Plaintiff was moved to a new cell in a new unit even though it meant he could no longer do the job he had in his prior unit.

On June 29, 2014 Defendant Schmidt spoke to Plaintiff about Plaintiff's June 26, 2014 complaint and accused Plaintiff of trying to manipulate staff again. Schmidt stated that if Plaintiff filed another similar complaint, Schmidt would file a disciplinary report

---

[1] He gained access to the law library on three other occasions by sneaking in while released for afternoon medication.

5

against Plaintiff and keep doing so "until a 115 sticks." Plaintiff stated that he believed non-party prison staff member Lindsey was retaliating against him by moving him out of his cell instead of moving Inmate Jones. Schmidt threatened to return Plaintiff to a cell with Jones if he continued to complain about losing his job.

Ombudsman Karin Richter was contacted by Plaintiff's family on or around July 10 or 11, and she contacted CCI. Plaintiff was then summoned to a meeting on July 11 at 10:00 am. Defendant Yerton and Escarcega asked why the Ombudsman had been contacted. Plaintiff explained that he believed that his move had been retaliatory. Yerton and Escarcega became angry and called Plaintiff a "bitch". Defendant Escarcega told Plaintiff that his complaint would not lead to him being moved back to his old cell and that Plaintiff needed to "drop it". Plaintiff stated that he wanted to be moved back to Unit Two. Defendant Yerton asked if Plaintiff wanted to be moved back in with Cedric Jones. Defendant Escarcega stated that if Plaintiff continued to complain or contact the Ombudsman, he would be moved Plaintiff back in with Cedric Jones.

Plaintiff continued to file complaints and contact the Ombudsman. On July 16, 2014, he was "unassigned" from his job because he had been moved. On July 22, 2014, he submitted a complaint about this to non-party Officer Miller. On July 24, 2014, Plaintiff was re-housed with Cedric Jones. Defendant Nelson escorted Cedric Jones to Plaintiff's cell.

Defendants Schmidt, Escarcega and Yerton facilitated the move through Defendant Nelson. Defendant Nelson was notified of the problems between Plaintiff and Cedric Jones on June 18, 2014. Defendant Nelson had accepted grievances related to the housing issues and had berated Plaintiff at the time for submitted the grievance.

Plaintiff submitted a grievance about being re-housed with Cedric Jones on July 24, 2014. On July 27, 2014 Plaintiff sent letters to Warden Kim Holland and Ombudsman Richter and three days later was moved to a different cell in Unit Two.

## B. Destruction of Grievances

Between January 2014 and July 2014 six of his grievances were destroyed out of retaliation. Grievances are kept in a locked collection box. Everyday a facility sergeant opens the box and takes the grievances to the collecting sergeant who goes through the appeals. Plaintiff alleges that the collecting sergeants regularly destroy allegations against staff and do not forward them to the Captain's Office (Defendant Jones). Plaintiff has kept copies of the complaints that he submitted on January 30, March 20, May 27, June 3, July 1, and July 15, 2014. Appeals staff confirm that they have not received these appeals. The missing complaints were collected by Defendants Emard, Rhodes, and Yerton. After his appeals disappeared he would be threatened or chastised by other staff members. Emard, Rhodes, and Yerton communicated with other staff regarding Plaintiff's appeals and, in some instances, about their content.

More specifically:

On January 30, 2014 Plaintiff submitted a grievance against Defendants Jones and Schmidt for threatening Plaintiff and for filing false disciplinary charges. This appeal was picked up by Defendant Emard. On Febuary 3, 2014 Plaintiff was threatened by non-party staff members Granillo and Lindsey, who told him he would no longer be allowed to work in his job if he continued filing grievances against staff. The only way they could have known that Plaintiff had filed an appeal was if they had been told about it by Defendants Emard or Jones.

On March 20, 2014 Plaintiff filed an appeal challenging a disciplinary finding for possessing a cell phone. This appeal was collected by Defendant Rhodes. On March 24, 2014 Defendant Rhodes told Plaintiff that he should be written up for falsifying documents, that he knew the cell phone had been Plaintiff's, and that the appeal would not get the charge dismissed. Plaintiff stated he had the right to appeal and Defendant Rhodes said "get the fuck out of here before I have you thrown in a cage." On July 31, 2014, during an interview about an unrelated complaint, Defendant Jones informed

Plaintiff he would not process Plaintiff's appeal of the disciplinary finding because he believed that Plaintiff was a liar and that he saw Plaintiff with the phone.

On May 27, 2014 Plaintiff submitted a grievance against non-party staff members Rodriguez and Granillo for threatening and assaulting Plaintiff on May 23, 2014 in retaliation for Plaintiff filing grievances against Jones and other staff. This complaint disappeared after being collected by Rhodes on May 28, 2014. Plaintiff was confronted by Rodriguez and Granillo and threatened with disciplinary charges if he did not drop the appeal. Plaintiff alleges that they learned of the complaint from Rhodes and Jones.

On June 3, 2014 Plaintiff submitted a grievance against Jones, Karlow and Marin regarding library access. This appeal disappeared on June 4, 2014 after being collected by Rhodes.

On July 1, 2014 Plaintiff submitted a grievance against Schmidt for threatening him with a false disciplinary charge. This complaint was collected by Defendant Yerton on July 2, 2014. On July 11, Defendant Yerton confronted Plaintiff regarding his complaints to the Ombudsman and called Plaintiff, "a bitch" who liked to write complaints.

On July 15, 2014 Plaintiff submitted a group grievance signed by 71 other inmates about staff at CCI restricting the length of meal times. This was collected by Defendant Rhodes.

Plaintiff alleges that the only staff members who have access to complaints are Defendants Emard, Rhodes, Yerton and Jones. Other inmate appeals filed during that time were not lost.

Plaintiff brings claims under his First Amendment right to be free from retaliation. He seeks damages and appointment of counsel.

**IV.     Request for Counsel**

Plaintiff does not have a constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), and the Court cannot require an

8

attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1), Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298 (1989). In certain exceptional circumstances the Court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). Rand, 113 F.3d at 1525. However, without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted).

In the present case, the Court does not find the required exceptional circumstances. Even if it is assumed that Plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. This Court is faced with similar cases almost daily. Further, at this early stage in the proceedings, the Court cannot make a determination that Plaintiff is likely to succeed on the merits, and based on a review of the record in this case, the Court does not find that Plaintiff cannot adequately articulate his claims. Id.

Plaintiff's request for counsel will therefore be denied without prejudice.

**V.      Analysis**

Plaintiff seeks to bring several claims relating to acts that he claims were taken because he exercised his First Amendment rights.

Within the prison context, a viable retaliation claim has five elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm), and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

9

The adverse action need not be so serious as to amount to a constitutional violation. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997). The Ninth Circuit has found adverse actions from a variety of activities including administrative segregation, transfers, retaliatory disciplinary proceedings and spreading rumors that led to harm. See Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001) (repeated threats of transfer); Hines, 108 F.3d at 269 (ten-day period of confinement and loss of television); Pratt, 65 F.3d at 807 (transfer and double-cell); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (correctional officers called plaintiff a "snitch" in front of other prisoners). The "mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009) (italics in original); Vernon, 255 F.3d at 1127.

The second element of a prisoner retaliation claim focuses on causation and motive. See Id. at 1271. A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco. Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). "[M]ere speculation that defendants acted out of retaliation is not sufficient." Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003). The circumstantial evidence of a retaliatory motive can include "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002).

The third prong can be satisfied by various activities but generally is shown by a prisoner's engagement in First Amendment activities. In regards to First Amendment protections afforded to those in prison, an "inmate retains those First Amendment rights

that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495, (1974). For example, filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing a civil rights litigation similarly is protected under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Blaisdell v. Frappiea, 729 F.3d 1237, 1242 (9th Cir. 2013) (retaliation claims not limited to First Amendment speech or associational freedom issues).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively show that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532.

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act

to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Each of the incidents that Plaintiff uses to support his claims will be considered below under these standards.

**1.   Administrative Segregation & Threat of Disciplinary Charges**

Plaintiff claims that Defendants Jones and Schmidt retaliated against him on January 21 and January 22, 2014, when they moved him to a holding cell, attempted to place him in Administrative Segregation, and threatened him with disciplinary charges for speaking with mental health professionals regarding his PTSD and concerns about double-celling.

Plaintiff should be permitted to proceed on a retaliation claim regarding these incidences. Both the attempted move to Administrative Segregation and the threat of disciplinary charges are threats which would chill First Amendment activity. See Brodheim 584 F.3d at 1270. Furthermore, the pleadings suggest no legitimate penological purpose for the Defendants' conduct. While it is not entirely clear that Plaintiff's discussion with mental health care providers is protected conduct, this uncertainty likewise means that the Court cannot conclude that the allegations fail to state a claim on that basis. See Torres v. Arellano, No. 115CV00575DADMJSPC, 2017 WL 1355823, at *13 (E.D. Cal. Mar. 24, 2017) (collecting cases and noting that it is not clearly established that verbal complaints constitute protected conduct). See also Blaisdell v. Frappiea, 729 F.3d 1237, 1242 (9th Cir. 2013) (holding that retaliation claims are not limited to speech or associational freedom issues, and "can be based upon the theory that the government imposed a burden on the plaintiff, more generally, because he exercised a constitutional right"). Thus, Plaintiff has sufficiently alleged a cognizable claim of First Amendment retaliation against both Defendants.

### 2. False Disciplinary Charge – January 27

Plaintiff claims that Defendants Schmidt and Jones also violated his First Amendment rights when they filed a false disciplinary charge against him for seeking mental health treatment and for filing a grievance against them.

The Court previously found this claim to be cognizable. The relevant allegations remain essentially unchanged. The filing of a grievance in prison is constitutionally protected. See Hines, 108 F.3d at 269 (9th Cir. 1997) (cognizable "adverse actions" may include false disciplinary charges). Defendants Schmidt and Jones were the subject of a grievance filed on January 23 and both were involved in the filing of the allegedly false disciplinary report. Thus, the facts as alleged are sufficient to support a cognizable claim against Defendants Schmidt and Jones.

### 3. Denial of Law Library Access

Plaintiff brings claims of First Amendment Retaliation against Defendants Jones, Karlow, and Marin for not allowing Plaintiff to access the library for a 90 day period while he was restricted from yard activities.

Plaintiff's allegations regarding the library policy for inmates on yard-restriction have evolved from the first complaint and are far from clear. In his initial complaint, Plaintiff indicated that Defendant Jones had instituted a policy barring inmates on yard-restricted status from the library. (ECF No. 1 at 6.) In his motion for reconsideration, Plaintiff clarified and stated there was no written policy regarding library access for inmates on yard-restricted status, that this policy was not enforced until after he was on yard-restricted status and that he was the only inmate denied access to the library due to this policy. (ECF No. 10 at 7.)

Here, Plaintiff does not specifically address whether the policy applied to other inmates or if it was only directed at him. He alleges that Defendant Jones ordered Defendants Marin and Karlow to restrict Plaintiff from accessing the library due to Plaintiff's yard restriction, and that Defendant Marin told him that Defendants Jones and

13

Karlow had ordered Plaintiff be denied access to the library. Finally, Plaintiff claims that Defendants Marin and Karlow lied about Plaintiff being on C-status in order to justify their denial of his access to the library. From these allegations it is unclear whether there was a general policy, written or unwritten, regarding inmates on yard-restricted status being banned from the library.

Regardless, the facts are sufficient to support a cognizable claim against Defendant Jones. Plaintiff filed grievances on January 22, 23 and 30 against Defendants Jones and Schmidt. Plaintiff's restricted yard access period, which is when Plaintiff began to be denied library access, began on February 1. On February 6, Plaintiff prevailed on the January 27 disciplinary charge submitted by Jones and Schmidt. Plaintiff apparently was denied law library access in February and March of 2014, with a single exception on March 12, 2014. This timing, along with the statements by Defendant Marin that the order to deny Plaintiff access to the library came from Defendant Jones and was directed at Plaintiff are sufficient indicate that the action was done because of Plaintiff's First Amendment activities. Denial of access to a law library is sufficient to chill first amendment speech. Plaintiff's allegations regarding the arbitrary nature of this policy, whatever its exact contours, are sufficient at the pleading stage, to indicate that this policy did not support a legitimate penological interest. Therefore, the facts as alleged are sufficient to state a cognizable claim against Defendant Jones.

Plaintiff fails to allege a cognizable claim against Defendants Marin and Karlow. Plaintiff does not indicate that either had a reason to retaliate against Plaintiff. Plaintiff's allegations indicate that they were following orders from Defendant Jones. Without more, the Court cannot infer from the complaint that these defendants were aware that the decision was retaliatory or that they were participating in retaliation. There is nothing to suggest that their false statements that Plaintiff was on C-status were anything other than error. Furthermore, the fact that the denial may have violated prison regulations, standing alone, is insufficient to support a constitutional violation. Therefore, these

claims will be dismissed. Plaintiff has failed in his amended complaint and in his motion for reconsideration to connect the actions of Defendants Karlow and Marin. It does not appear that these deficiencies can be cured through amendment.

### 4. Threat of False Disciplinary Charge – June 29, 2017

Plaintiff claims Defendant Schmidt retaliated against him by threatening to file a false disciplinary charge if Plaintiff filed another complaint against Schmidt.

This claim previously was found cognizable by the District Judge on Plaintiff's motion for reconsideration. (ECF No. 10.) The relevant allegations are essentially unchanged. Plaintiff alleges that on June 26 he submitted a complaint against Defendant Schmidt and that on June 29, Schmidt threatened to continue filing disciplinary charges against Plaintiff until Plaintiff was found guilty of some offense. This is sufficient to indicate that Defendant Schmidt's threat was based on Plaintiff's constitutionally protected First Amendment activities. The claim is cognizable as pled.

### 5. Housing Transfers

Plaintiff brings claims against Defendants Schmidt, Yerton, Escarcega, and Nelson for violating his First Amendment rights by threatening to move, and then actually moving, Plaintiff into a cell with Cedric Jones in retaliation for Plaintiff's complaints. Plaintiff separates the claims regarding the threat and the actual move, but since they involve the same set of events they will be considered together.

The allegations against Defendants Schmidt, Yerton, and Escarga previously were found to state a cognizable claim. (ECF No. 9) The relevant allegations remain essentially unchanged. Plaintiff alleges that he filed complaints and contacted the Ombudsman regarding his housing, and that in response Defendants Yerton, Escarcega and Schmidt threatened to re-house Plaintiff with Cedric Jones. These claims remain cognizable as pled.

Plaintiff additionally alleges that, Defendant Nelson escorted Plaintiff when he was re-housed with Jones, and thereafter stated that Plaintiff should have "shut up" about the

1  effect of his housing assignment on his job, and so now would have to deal with the
2  consequences. The facts as alleged are sufficient to indicate that Nelson participated in
3  a retaliatory move because of Plaintiff's protected constitutional activities.

4  Although the precise role Defendants Schmidt, Yerton, Escarga, and Nelson each
5  may have played in re-housing Plaintiff with Jones is unclear, the facts are sufficient to
6  suggest that they participated in retaliating against Plaintiff by way of this transfer.
7  Plaintiff will be permitted to proceed on these claims.

### 6. Destruction of Grievances

Plaintiff brings claims against Defendants Jones, Rhodes, Emard, and Yerton for violating his First Amendment rights by destroying six grievances in retaliation against him.

Plaintiff fails to allege a claim against Defendants Emard, Yerton and Rhodes for the destruction of grievances. Plaintiff's allegations that they were responsible for destroying the grievances and telling other staff about them are entirely speculative. Plaintiff indicates that he had issued numerous complaints and grievances through many different channels. Apparently, his history of filing grievances was well-known to staff. Even if Defendants had read the grievances and told other staff members about them, this does not plausibly indicate that they destroyed the grievances. Plaintiff's allegation that Yerton called Plaintiff a "bitch" who likes to complain and his allegation that Defendant Rhodes disagreed about the grounds of the March 20 appeal do not support a claim that either destroyed a grievance. Defendant Jones later statement that he had seen the March 20 appeal is inconsistent with a claim that it had been destroyed by Defendant Rhodes. These claims will be dismissed. Given Plaintiff's consistent failure to allege facts sufficient to support such claims against these Defendants, Further amendment appears futile.

However, Plaintiff's allegations against Defendant Jones regarding his March 20, 2014 do state a cognizable claim. Plaintiff alleges that, on July 31, Defendant Jones

16

stated he would not forward the grievance because he believed Plaintiff was a liar. In the overall context of the repeated conflicts between Plaintiff and Jones, this is sufficient to indicate that Defendant Jones destroyed or refused to process the grievance out of retaliation. However, Plaintiff's allegations regarding the remaining five grievances do not plausibly tie Jones to the destruction of the grievances and are too speculative to support a claim.

Lastly, Plaintiff describes a variety of other actions taken by non-parties that he describes as retaliatory. These allegations will not be addressed here. Fed. R. Civ. P. 10(a) (requiring that each defendant be named in the caption of the complaint). McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996) (holding that a complaint is subject to dismissal if "one cannot determine from the complaint who is being sued, [and] for what relief. . . .")

## V.     Conclusion and Order

Based on the foregoing, Plaintiff states cognizable First Amendment retaliation claims for damages against Defendants Jones, Schmidt, Yerton, Escarcega and Nelson in relation to the following incidents: (1) against Defendants Jones and Schmidt for the January 21 and 22, 2014 attempt to move Plaintiff to Administrative Segregation and threat to bring disciplinary proceedings; (2) against Defendants Jones and Schmidt for filing false disciplinary charges on January 27, 2014; (3) against Defendant Jones for denying Plaintiff law library access in February and March 2014; (4) against Defendants Schmidt, Yerton, Escarega, and Nelson for re-housing Plaintiff with Inmate Jones; and (5) against Defendant Jones for destroying a March 20, 2014 grievance. The remaining claims are not cognizable as pled. Plaintiff previously was advised of pleading deficiencies and failed to cure them. Further leave to amend reasonable appears futile and should be denied.

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff proceed on his First Amendment retaliation claims against Defendants Jones, Schmidt, Yerton, Escarcega and Nelson, as stated herein; and

2. All other claims asserted in the first amended complaint and all other named Defendants be dismissed with prejudice.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   November 13, 2017          /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE